T.G. NELSON, Circuit Judge:
 

 The issue raised in this appeal is whether a federally-mandated MCS-90 endorsement to a trucker’s insurance policy creates a duty to defend the insured in an underlying tort action involving a vehicle not covered under the main policy. We hold that it does not and affirm the district court’s grant of summary judgment in favor of the insurer.
 

 I.
 

 This insurance coverage dispute arises from Stephen Burdick’s claim for injuries suffered when a car in which he was a passenger collided with a parked trailer unit that was jutting out into the street. The trailer was leased by, and the container was owned by, China Ocean Shipping Company (“Cosco”). The trailer carried a shipping container that had been delivered to Cosco’s warehouse by Hon Kay Suen. He was a self-employed trucker acting as an independent contractor for the insured appellant Bobac Trucking Company.
 

 Burdick sued multiple defendants in state court, including Bobac and Cosco. Cosco filed a cross-claim against Bobac. Bobac tendered its defense of these actions to ap-pellee Harco National Insurance Company, which had issued Bobac a trucker’s policy. Harco denied the tender and refused to defend or indemnify Bobac because neither Coseo’s trailer nor Suen’s tractor were listed in Bobac’s policy’s schedule of covered vehicles. Bobac’s coverage under the Harco poli
 
 *-849
 
 cy was limited to specifically described “autos.” Bobac had not purchased the broader coverage known as “hired car” coverage. Bobac’s contract with Suen provided that Bobac be covered under Suen’s policy with his insurer. Bobac in fact was defended as an additional insured under Suen’s separate trucker’s policy.
 

 Harco filed this declaratory action in federal court. Subsequently, the underlying tort action was removed to federal court and then settled. Harco contributed $225,000 on behalf of Bobac to the $1.8 million settlement of the underlying action, pursuant to Hareo’s obligations under an Interstate Commerce Commission (“ICC”)-mandated
 
 [1]
 
 MCS-90 endorsement for public liability on the policy issued to Bobac.
 

 The MCS-90 endorsement provided that Harco pay any judgments in favor of members of the public rendered against Bobac, regardless of whether the vehicles involved were covered by the policy. The terms of the endorsement required Bobac to reimburse Harco “for any payment that the company would not have been obligated to make under the provisions of the underlying policy except for the agreement contained in this endorsement.” Harco later filed an amended complaint seeking reimbursement of the $225,000 from Bobac.
 

 Bobac moved for summary judgment, arguing that the MCS-90 endorsement expanded the coverage provisions to provide coverage and a duty to defend the underlying action. The district court rejected these arguments and granted Harco’s cross-motion for summary judgment, ruling that Bobac must reimburse Harco for the $225,000 payment it made under the MCS-90 endorsement to Burdick on Bobac’s behalf. Bobac timely appeals, focusing only on whether it must reimburse Harco under the MCS-90 endorsement.
 

 The district court had jurisdiction over this diversity declaratory and monetary relief action, which also involves a question of federal law.
 
 Compare Continental Casualty Co. v. Robsac Indus.,
 
 947 F.2d 1867, 1374 (9th Cir. 1991) (“Courts should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting
 
 only issues of state law
 
 during the pendency of parallel proceedings in state court.” (emphasis added)). We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court’s grant of summary judgment is
 
 de novo. Bagdadi v. Nazar,
 
 84 F.3d 1194, 1197 (9th Cir.1996);
 
 see also
 
 Fed.R.Civ.P. 56(c).
 

 II.
 

 There is no dispute that the Harco trucker’s policy issued to Bobac covers only “specifically described ‘autos,’ ” and that neither the Cosco trailer nor the Suen tractor were specifically described autos. It is also undisputed that the MCS-90 contains no “duty to defend” language. Bobac argues that the “specifically described ‘autos’” limitation of the policy is superceded by the MCS-90 endorsement for “motor vehicles,” whether or not they are “specifically described in the policy,” and that Harco’s defense and indemnity obligations therefore extend to Suen’s tractor and Cosco’s trailer. Bobac contends that Harco’s breach of the duty to defend relieved Bobac of its contractual duty to reimburse Harco the $225,000. Bobac’s attempt to avoid reimbursement of the $225,-000 fails because it relies on a series of incorrect arguments.
 

 We reject Bobac’s reliance on
 
 Kennedy v. American Fidelity & Casualty Co.,
 
 97 Cal.App.2d 315, 217 P.2d. 457 (1950), and California Civil Code § 2778 to establish a duty to defend. Federal law applies to the operation and effect of ICC-mandated endorsements.
 
 Planet Ins. Co. v. Transport Indem. Co.,
 
 823 F.2d 285, 288 (9th Cir.1987);
 
 see also Canal Ins. Co. v. First General Ins. Co.,
 
 889 F.2d 604, 610 (5th Cir.1989),
 
 modified on other grounds,
 
 901 F.2d 45 (5th Cir. 1990);
 
 Ford. Motor Co. v. Transport Indem. Co.,
 
 795 F.2d 538, 545 (6th Cir.1986);
 
 In re Yale Express Sys., Inc.,
 
 362 F.2d 111, 114 (2d Cir.1966). Contrary to Bobae’s assertions, federal courts have consistently stated that the MCS-90 endorsement does not create a duty to defend claims which are not covered
 
 *-848
 
 by the policy but only by the endorsement.
 
 Canal,
 
 889 F.2d at 612 (“Because the accident did not involve a listed vehicle, Canal had no duty [under the MCS-90] to defend Custom.”);
 
 National Am. Ins. Co. v. Central States Carriers, Inc.,
 
 785 F.Supp. 793, 797 (N.D.Ind.1992) (“[T]he [MCS-90] endorsement was clearly not an insurance policy requiring National American to defend Central States.”);
 
 see also Carolina Casualty Ins. Co. v. Insurance Co. of N. Am.,
 
 595 F.2d 128, 144 (Bd Cir.1979) (“We conclude that nothing in the ... ICC endorsement alters otherwise existing duties to defend.”).
 

 Both the district court and Harco are correct that the MCS-90 does not expand coverage to autos not covered under the main policy. A defense is provided under the policy only when an accident involves a covered auto. The policy states that Harco has “no duty to defend ‘suits’ for ‘bodily injury
 
 [1]
 
 or ‘property damage’
 
 not covered by this Coverage Form
 
 (emphasis added).” The MCS-90 specifies that “all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the [insurer].” Furthermore, the reimbursement provision of the MCS-90 is inconsistent with implying a duty to defend.
 

 Bobac attempts to distinguish this case because it involves a dispute between the insured and the insurer, not a dispute between two insurers. This distinction is meaningless. The purpose of the MCS-90 is to protect the public, not to create a windfall to the insured.
 
 See Canal,
 
 889 F.2d at 611 (observing that the MCS-90 protection “serves no purpose
 
 as against the insured
 
 or among insurers” (emphasis added));
 
 see also Carolina Casualty,
 
 595 F.2d 128, 139 (no duty to defend created by the ICC endorsement where both the owner-operator of the truck and the ICC-regulated lessee were also parties to the declaratory action). The public protection purpose has been served here, and the terms of the endorsement specifically provide that now Harco may look to Bobac for reimbursement.
 

 Bobac also argues that because the MCS-90 endorsement says it is “primary,” there was a duty to defend the underlying action. The MCS-90 did not make Bobac’s policy primary in the underlying action. As Harco points out, the “primary” option contained in the MCS-90 pertains to allowing two insurers to aggregate the financial security limits required by the ICC.
 

 Bobac contends that another sentence in the MCS-90 creates a duty to defend. The endorsement provides that:
 

 It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from
 
 liability
 
 or from the payment of any
 
 final judgment,
 
 within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.
 

 (Emphasis added.) Bobac argues that the endorsement distinguishes liability from payment of a final judgment and that therefore “liability” somehow refers to Harco’s contractual duties to Bobac under the main policy. This argument was made for the first time at oral argument. Since the issue is one of law and patently lacks merit, we address it here.
 
 See Fry v. Melaragno,
 
 939 F.2d 832, 835 (9th Cir.1991).
 

 The policy provision advanced by Bobac clearly deals only with the insurer’s duty to pay even if its insured is unable to respond to the insurer’s claim for reimbursement. The insurer’s obligation is primary, as the endorsement says, and the insurer must pay whether or not it can ultimately recover its payment. This provision says nothing about Harco’s duties under the main policy or about any duty of Harco to defend.
 

 Finally, the district court’s comparison of an insurer’s obligation under an MCS-90 to that of a surety does not demonstrate any error. The analogy was apt.
 
 See, e.g., John Deere Ins. Co. v. Truckin’ USA,
 
 No. CIV. A.3-.95-CV-1556-D, 1996 WL 734952, at *5 (N.D.Tex. Dec.10, 1996).
 

 Bobac contends, without any relevant support, that Hareo’s breach of the duty to defend relieved Bobac of any reimbursement obligation under the MCS-90. There can be
 
 *-847
 
 no breach of a nonexistent duty. The district court correctly enforced the reimbursement provision in the MCS-90.
 

 III.
 

 The district court carefully and correctly addressed Bobac’s arguments. The order granting summary judgment to Harco is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . 49C.F.R. § 387.15 (1996).